UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-Civ-23741-WILLIAMS/TORRES

ZELMA SIPLIN,

       Plaintiff,

v.

CARNIVAL CORPORATION,

       Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION IN LIMINE

This matter is before the Court on Zelma Siplin's ("Plaintiff") motion in limine against Carnival Corporation ("Defendant"). [D.E. 43]. Defendant responded to Plaintiff's motion on June 25, 2018. [D.E. 53] to which Plaintiff did not reply. Therefore, Plaintiff's motion in limine is now ripe for disposition. After careful consideration of the motion, response, relevant authority, and for the reasons discussed below, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

    *I.    APPLICABLE LEGAL PRINCIPLES AND LAW*

The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.

1

1996)). Under the Federal Rules of Evidence, evidence is considered relevant as long as it has the tendency to make a fact of consequence more or less probable. *See* Fed. R. Evid. 401(a)-(b). The Rules permit the exclusion of relevant evidence when the probative value is substantially outweighed by danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and/or needlessly presenting cumulative evidence. Fed. R. Evid. 403 (emphasis added). Courts are cautioned to use Rule 403 sparingly, *see, e.g., United States v. King*, 713 F.2d 627, 631 (1983), in part because the federal rules favor admission of evidence and in part because relevant evidence is inherently prejudicial to a criminal defendant. *See id*. (citing to other sources).

The term "unfair prejudice" in and of itself speaks to the ability of a piece of relevant evidence to lure the fact finder into declaring a defendant's guilt on grounds other than specific proof of the offense charged. *Old Chief v. United States*, 519 U.S. 172, 180 (1997). It also signifies an undue tendency to suggest guilt on an improper basis, commonly an emotional one. *See id.* In the context of a Rule 403 balancing test, the more essential the piece of evidence is to a case, the higher its probative value; the higher a piece of evidence's probative value, the less likely it should be excluded on 403 grounds. *See King*, 713 F.2d at 631.

Rule 404(b) provides that while evidence of a defendant's other crimes, wrongs, or acts is inadmissible to prove a defendant's actions conform with his character, such evidence may be admitted for other purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

2

mistake or accident." Fed. R. Evid. 404(b). Essentially, Rule 404(b) "protects against the introduction of extrinsic act evidence when that evidence is offered solely to prove character." *Huddleston v. United States*, 485 U.S. 681, 687 (1988). For evidence of other crimes or acts to be admissible under Rule 404(b), (1) the evidence must be relevant to an issue other than defendant's character, (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the extrinsic act(s) in question, and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice. *See, e.g., United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000). The evidence must also pass a 403 balancing test. *Id.* To meet the second prong of the three-part test above, the movant need only make a sufficient showing under which a jury could believe the act actually happened. *See generally Huddleston*, 485 U.S. 681.

Evidence falls outside the scope of Rule 404(b) when it is (1) an uncharged offense that arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense. *United States v. Baker*, 432 F.3d 1189, 1205 n.9 (11th Cir. 2005) (quoting another source).

> Evidence not part of the crime charged but [that] pertain[s] to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime . . . forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). Such evidence must also still satisfy the requirements of Rule 403. *See Baker*, 432 F.3d at 1189.

3

## II. ANALYSIS

### A. *Whether Testimony Should be Precluded for Failure to Produce a 30(b)(6) Deponent on all Areas of Inquiry*

Plaintiff's motion aims to exclude questioning, testimony, evidence or argument regarding six areas of inquiry. First, Plaintiff claims that certain topics that Plaintiff noticed pursuant to Rule 30(b)(6) should be excluded because Defendant failed to produce a corporate representative that was knowledgeable on all topics. The outstanding areas of inquiry at issue are nos. 19, 39, 30, and 57 – all of which relate to Defendant's policies and procedures regarding the maintenance, cleaning, inspection, repair, replacement, and upkeep applicable to the tile floor of the vessel where Plaintiff fell. Plaintiff alleges that Defendant failed to advise that its initial 30(b)(6) deponent, Ms. Monica Petisco, was unprepared to testify on all areas of the notice until the morning of the deposition. Because Defendant failed to meet its burden of producing a corporate representative to testify on all areas of inquiry that Plaintiff noticed under Rule 30(b)(6), Plaintiff concludes that Defendant should be precluded from presenting testimony on the areas that it did not produce a corporate representative.[1] *See QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012) (citations omitted).

In response, Defendant argues that Plaintiff's motion is misplaced because Defendant sent Plaintiff an email dated March 16, 2018 to notify Plaintiff that Ms. Monica Petisco did not have knowledge of all areas in Plaintiff's deposition notice –

---

[1] Plaintiff's March 5, 2018 deposition notice referenced sixty designated areas of inquiry as well as sixty references for a production of documents.

specifically areas 19, 39, 40, and 57.[2] In the same e-mail, Defendant also advised Plaintiff that "[i]t will be incumbent upon the [Defendant] to produce the appropriate individual to testify as to areas 19, 39, 40, and 57. [D.E. 43-3]. Ms. Monica Petisco's deposition was continued twice and completed on April 24, 2018.

Plaintiff then requested an opportunity to depose the Director of Occupational Safety, Mr. Dominguez, and noticed it for Thursday, May 17, 2018 – eight days prior to the discovery cut-off date. Defendant claims, at no time during the nearly three week period leading up to Mr. Dominguez's deposition, were there any conversations between the parties on a supplemental corporate representative deposition. At the time of Mr. Dominguez's deposition, Defendant advised Plaintiff that the deponent was not being presented as a corporate representative. [D.E. 53-2]. After the deposition concluded, Defendant claims that there were no conversations between the parties on a corporate representative to testify on the remaining areas of inquiry. Defendant also suggests that Plaintiff's motion lacks merit because Plaintiff was clearly aware that the initially produced corporate representative would not be presented to testify on all the topics in the deposition notice. Therefore, Defendant concludes that Plaintiff's motion must be denied because (1) the parties failed to address the matter prior to the discovery cut off, and (2) Plaintiff will not suffer any prejudice if the testimony relating the subject areas is provided at trial.

---

[2]  The discovery deadline in this case passed on May 25, 2018.

5

A party "may depose, any person, including a party, without leave of court except as provided in Rule 30(a)(2)." Fed. R. Civ. P. 30(a)(1). If a party names a private corporation as the deponent, the named corporation "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6). The persons designated "must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). "The party seeking discovery must describe the matters with reasonable particularity and the responding corporation or entity must produce one or more witnesses who can testify about the corporation's knowledge of the noticed topics." *QBE Ins. Corp.*, 277 F.R.D. at 688 (citation omitted).

It is well established that "[t]he designating party has a duty to designate more than one deponent if necessary to respond to questions on all relevant areas of inquiry listed in the notice." *Id.* (citation omitted). A party's failure to comply with its Rule 30(b)(6) obligations exposes it to various sanctions, including imposition of costs, preclusion of testimony, and entry of default. *See id.* at 690; *see also Sciarretta v. Lincoln Nat. Life Ins. Co.*, 778 F.3d 1205, 1213 (11th Cir. 2015) (discussing the court's inherent power to impose sanctions sua sponte upon a finding of bad faith in meeting Rule 30(b)(6) obligations). Additionally, a party's failure to properly designate a Rule 30(b)(6) witness can be viewed as non-appearance by that party, thus justifying the imposition of sanctions against it. However, simply because a designee cannot answer every question on a certain

6

topic does not necessarily mean that the corporation failed to meet its Rule 30(b)(6) obligation. *QBE Ins. Corp.*, 277 F.R.D. at 691.

Here, the issue is whether any testimony that Defendant's corporate representative would have testified to with respect to the outstanding areas of inquiry in the deposition notice should be precluded at trial. It is true that Ms. Petisco was unable to respond to every single one of the areas of inquiry in Plaintiff's deposition notice. But, Plaintiff is not entitled to relief. In the first place, to the extent a discovery violation arose Plaintiff waived it by sitting idly by while weeks passed and the discovery deadline passed without doing anything – such as seeking a motion to compel another corporate representative for a deposition. The failure to timely seek relief under Rule 37 constitutes a waiver of the right to sanction a party from that alleged violation. Local Rule 26.1(g)(1) provides in material part that "all disputes related to discovery shall be presented to the Court . . . within (30) days from the . . . date on which a party first learned of or should have learned of a purported deficiency concerning the production of discovery materials. Failure to present the dispute to the Court within that timeframe, absent a showing of good cause for the delay, may constitute a waiver of the relief sought at the Court's discretion." This Rule "reflects a policy of promoting the prompt resolution of discovery disputes by requiring the parties to timely bring to the Court's attention matters that the parties cannot resolve amongst themselves." *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co.,* 2011 WL 6190160, at *2 (S.D. Fla. Dec. 2, 2011).

7

So Plaintiff failed to file a timely request for relief prior to the discovery cutoff, when she was on notice of the alleged discovery violation, or at least immediately thereafter. Plaintiff thus waived any right to complain about it now in an untimely motion for sanctions masquerading as a motion in limine.

Second, apart from that procedural failure, it is not altogether clear that the motion would have granted relief had it been timely sought. Plaintiff's notice was quite extensive and voluminous. Sixty deposition topics seems quite over-the-top and cumulative in the context of this straightforward case. Moreover, Plaintiff consumed much deposition time with the deponent on the topics she did know about. Thus a motion to compel may have been rebuffed on the grounds that Rule 26 did not entitle Plaintiff to cumulative or unreasonable discovery that was not proportional to the needs of this case. The Court's review of the record shows that Defendant materially complied with its discovery obligations and Plaintiff obtained substantial discovery to prepare her case.

In short, Plaintiff waived her right to compel another 30(b)(6) deposition – to the extent she was entitled to that relief notwithstanding Rule 26(c) – because she did nothing for several weeks while the discovery deadline passed. Because discovery is now closed, Plaintiff's motion in limine to preclude Defendant from presenting testimony on areas where Defendant failed to produce a corporate representative is **DENIED**.

### B. *Whether Mr. Dominguez's Testimony Should be Precluded*

At the deposition of Mr. Dominguez (Defendant's safety department manager), he testified that Carnival uses a coefficient of friction ("COF") of 0.42 as its applicable safety standard when conducting annual tests of its tile floors – specifically the tile floor that Plaintiff slipped on in this case. Plaintiff argues that Mr. Dominguez was never disclosed as an expert in this case and that the COF for flooring material is only within the realm of a qualified expert. Plaintiff also claims that Mr. Dominguez has no personal knowledge of the applicable COF standard and that he failed to identify any documentation in support of his position that Defendant uses 0.42 as its COF. Finally, Plaintiff suggests that Mr. Dominguez's 0.42 COF standard is (1) unsubstantiated, (2) unauthenticated, (3) unduly prejudicial, (4) constitutes pure hearsay, and (5) assumes facts not in evidence. Because Mr. Dominguez is neither a qualified expert nor has the requisite personal knowledge to testify as to the applicable COF standard, Plaintiff concludes that his testimony on the 0.42 COF standard in relation to Defendant's floors must be excluded.

Plaintiff's arguments are certainly viable with respect to the credibility of Mr. Dominguez, but we are unconvinced that they warrant a wholesale exclusion of his testimony as to the applicable COF used to test Defendant's floors. While Mr. Dominguez is admittedly not an expert in this case, his work as a supervisor gives him personal knowledge of Defendant's policies that are responsible for the prevention of accidents aboard Defendant's vessels. And in that capacity, he does

have personal knowledge as a lay witness of the standards in place for safety inspections of the floor used throughout Defendant's vessels.

Plaintiff suggests that Mr. Dominguez cannot testify as a lay witness on this issue because his testimony constitutes knowledge that is scientific, technical, or specialized. *See, e.g.*, *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193–94 (11th Cir. 2011) ("A qualified expert who uses reliable testing methodology may testify as to the safety of a defendant's choice of flooring, determined by the surface's coefficient of friction.") (citing *Great Am. Ins. Co. v. Cutrer,* 298 F.2d 79, 80–81 (5th Cir. 1962) (noting that both the plaintiff and defendant presented expert evidence about the coefficient of friction on the steps and sidewalk where the plaintiff slipped and fell); *Santos v. Posadas De Puerto Rico Assocs., Inc.,* 452 F.3d 59, 63–64 (1st Cir. 2006) (approving the admission of expert testimony regarding the variable friction between the pool steps and their edges on the grounds that it was crucial to the plaintiff's theory of the case)). If Mr. Dominguez wanted to testify on the methodology of the COF, the safety of the floor, and its slipperiness, that testimony would certainly require an expert witness. But, mere knowledge of a COF does not by itself go beyond the personal knowledge of a lay witness. Therefore, Plaintiff's motion to preclude Mr. Dominguez's testimony on the COF standard used aboard Defendant's vessels is **DENIED**.

### C. *Whether Testimony Should be Precluded on Letters of Protection or Any Physician/Law Firm Relationship*

Plaintiff's third argument anticipates that Defendant will attempt to argue at trial (1) that her treating physicians use letters of protection[3], (2) that her attorneys referred her to certain physicians, and (3) that a relationship existed between her attorneys and her treating physicians. While Plaintiff testified that she might have signed an agreement with one of her treating physicians, no letter of protection was requested or produced in this case. Plaintiff also contends that Defendant has no written letter in its possession and that Defendant failed to depose Plaintiff's treating physician on this issue. Because questions on these topics are protected under the attorney-client privilege, Plaintiff concludes that Defendant should be precluded from raising these issues at trial because the Florida Supreme Court's decision in *Worley v. Cent. Fla. Young Men's Christian Ass'n, Inc.*, 228 So. 3d 18, 26 (Fla. 2017), forecloses that line of inquiry.

In *Worley*, the issue before the Florida Supreme Court was "whether the attorney-client privilege protects a plaintiff from disclosing that an attorney referred him or her to a doctor for treatment, or a law firm from producing documents related to a possible referral relationship between the firm and its

---

[3] "A letter of protection is a document sent by an attorney on a client's behalf to a health-care provider when the client needs medical treatment, but does not have insurance. Generally, the letter states that the client is involved in a court case and seeks an agreement from the medical provider to treat the client in exchange for deferred payment of the provider's bill from the proceeds of [a] settlement or award; and typically, if the client does not obtain a favorable recovery, the client is still liable to pay the provider's bills." Caroline C. Pace, *Tort Recovery for Medicare Beneficiaries: Procedures, Pitfalls and Potential Values*, 49 Hous. Law. 24, 27 (2012).

client's treating physicians." *Id*. at 22. The Florida Supreme Court held that both were protected under the attorney-client privilege.

However, Plaintiff's reliance on *Worley* is misplaced because Defendant merely seeks to impeach the credibility of Plaintiff's physicians on bias, and to inquire whether the treating physician has knowledge of a letter of protection that may demonstrate whether the physician has an interest in the outcome of the litigation. The Florida Supreme Court explicitly held that this line of inquiry is allowed for the limited purpose of impeachment:

> We recognize that the evidence code allows a party to attack a witness's credibility based on bias. § 90.608(2), Fla. Stat. (2015). We also agree that 'a treating physician, like any other witness, is subject to impeachment based on bias.' However, bias on the part of the treating physician can be established by providing evidence of a letter of protection (LOP) which may demonstrate that the physician has an interest in the outcome of the litigation. In the instant, Worley was treated by all of her specialists pursuant to letters of protection. Bias may also be established by providing evidence that the physician's practice was based entirely on patients treated pursuant to LOPs, as was found in the instant case. Specifically, a Sea Spine employee testified during depositions that at the time of Worley's treatment, its entire practice was based on patients treated pursuant to LOPs. Additionally, medical bills that are higher than normal can be presented to dispute the physician's testimony regarding the necessity of treatment and the appropriate amount of damages.

*Worley*, 228 So. 3d at 23–24. Because *Worley* allows Defendant to challenge the credibility of Plaintiff's treating physician for the limited purpose of impeachment and to inquire whether the treating physician's practice is based on letters of protection, Plaintiff's motion in limine is **DENIED** but only based on the Court's understanding that this evidence would be admitted only as impeachment evidence.

To the extent that Defendant intended to introduce this evidence as part of its case in chief, Plaintiff would be entitled to strike that testimony at trial under *Worley*.

**D.     *Whether Dr. Zollo's Involvement in Prior Cases Should be Precluded***

Next, Plaintiff seeks to preclude Defendant from referencing other cases where Dr. Zollo was retained, proffered testimony, or was subjected to a *Daubert* challenge. Plaintiff argues, citing Florida evidentiary cases that are not directly binding here, that these are collateral matters that will confuse the the jury and place Dr. Zollo on trial. *See Cruse v. State*, 588 So. 2d 983, 988 (Fla. 1991) ("If such inquiry were permissible, every trial involving expert testimony could quickly turn into a battle over the merits of prior opinions by those experts in previous cases, malpractice suits filed against them, and Department of Professional Regulation allegations."). Therefore, Plaintiff concludes that Defendant should be precluded from raising any collateral matters with Dr. Zollo at trial.

Plaintiff's argument has support because impeachment on collateral matters under the Federal Evidence Code is also generally impermissible. S*ee United States v. Herzberg,* 558 F.2d 1219, 1223 (5th Cir. 1977) ("Prior wrongful acts not resulting in a criminal conviction ordinarily are 'collateral matters.' "). Arguably an expert's exclusion in another case is a "wrongful act" in a sense and thus is really collateral to the issues in this particular case. There is, however, an exception to this general rule if the witness on direct was asked about other cases. If a collateral topic – such as a witness's qualification as an expert in another case – is introduced in her direct examination, the federal rule allows for impeachment evidence to come in on

13

collateral matters so long as extrinsic evidence is not introduced to further the point. *See, e.g., United States v. Kohli,* 847 F.3d 483, 493 (7th Cir. 2017) ("the rule is implicated only when a party presents 'extrinsic evidence' that a witness's testimony is incorrect.").

Defendant – in a two sentence response – has presented no compelling reason for seeking to reference Dr. Zollo's prior *Daubert* challenges for the purposes of bias, corruption, or lack of competency. Defendant merely concludes that Dr. Zollo's testimony would be consistent with the parameters for expert testimony in Rule 702 of the Federal Rules of Evidence. Defendant would have to do more to convince the Court that the expert's participation is worthy of impeachment in this case under Rule 608. Just because an expert was subject to a successful Daubert challenge, by itself, is too remote and prejudicial to permit without knowing specifically what the basis of the challenge was. And, we do not know the extent to which Plaintiff will rely upon the expert's experience in other cases in direct examination. Obviously, if Plaintiff indepthly delves into the expert's litigation experience, the door will be opened for appropriate impeachment based on other similar past experience that contradict the expert's self-aggrandizing testimony.

Accordingly, Plaintiff's motion in limine to preclude Defendant from referencing any cases where Dr. Zollo was retained, proffered testimony, or was subjected to a *Daubert* challenge is **GRANTED** but with leave to renew at trial if Defendant can show the trial judge that Plaintiff has sufficiently opened the door to collateral evidence of other cases in which the expert testified. In so doing,

Defendant would have to show why the expert was excluded that relates to the expert's truthfulness or competence and not just that a successful *Daubert* challenge was raised involving that expert.

### E. *Whether Dr. Rangan's Testimony Should be Precluded*

At a deposition, Defendant's shipboard physician, Dr. Rangan, testified that signs of pain are increased heart rate and blood pressure, and that Plaintiff did not have either of these symptoms after her slip and fall. Dr. Rangan also testified that she did not believe Plaintiff would develop soreness in other areas of her body after more than a day following the incident. Plaintiff suggests that Dr. Rangan's testimony is improper because it assumes that Plaintiff was faking her injuries. Because it is the function of the jury to weigh Plaintiff's credibility, Plaintiff concludes that Defendant should be precluded from introducing this testimony at trial.

Plaintiff's argument is wholly unpersuasive because Dr. Rangan's testimony merely constitutes her observations, findings, and conclusions with respect to Plaintiff's medical status after she fell. And it goes to Dr. Rangan's state of mind at the time of the injury in addressing the injured Plaintiff's complaints. Plaintiff has presented no viable argument on why this testimony should be precluded other than it might undermine Plaintiff's alleged injuries. Because Dr. Rangan's testimony is relevant and leaves the truthfulness and credibility determinations to the jury, Plaintiff's motion in limine is **DENIED**. Plaintiff can, of course, seek a limiting instruction at the time to the extent that Defendant is trying to overplay its

15

hand by inferring that Dr. Rangan should be treated as an expert in the case and allowed to render an opinion on the ultimate issue.

    **F.**    *<u>Whether Testimony on Dr. Zollo's Methodology Should be Precluded</u>*

Plaintiff's final request is to exclude testimony relating to any disavowal in the scientific community of the "XL Tribometer" that Plaintiff's expert, Dr. Zollo, used to test the floor surface of Defendant's vessel and to render opinions relating to its slipperiness. Near the end of Ms. Monica Petisco's deposition, defense counsel asked her if she was aware that the "XL Tribometer" had been disavowed in the scientific community. While Ms. Petisco did not know the answer to this question, Plaintiff anticipates that Defendant will attempt to introduce similar testimony at trial. Plaintiff suggests that Defendant has no expert witness to introduce this testimony and that it would lack a proper foundation. For these reasons, Plaintiff concludes that Defendant should be precluded from making any argument that Dr. Zollo's tools used in this case have been disavowed in the scientific community.

Rule 702 of the Federal Rules of Evidence allows "a witness qualified as an expert by knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case," provided that the "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." In *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), the Supreme Court "assign[ed] to

the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597.

Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. *Id.* at 592 (footnotes omitted). Thus, for proffered expert testimony to be admissible, a court must determine that:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chem., Inc.,* 158 F.3d 548, 562 (11th Cir. 1998). But while "[t]he judge's role is to keep unreliable and irrelevant information from the jury," it "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1311–12 (11th Cir. 1999). The admissibility standard is a liberal one, *United States v. Hankey,* 203 F.3d 1160, 1168 (9th Cir. 2000), and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the *exception* rather than the rule." Fed. R. Evid. 702 advisory committee notes, 2000 amendments.

Plaintiff's motion is well taken because Defendant has no expert to provide rebuttal testimony to Dr. Zollo's scientific methods in testing the slipperiness of the floor on Defendant's vessel. On June 5, 2018, we struck Defendant's expert because it failed to establish good cause for its failure to comply with the Court's Scheduling Order. [D.E. 42]. We acknowledged that untimely expert disclosures may in some circumstances be excused depending on the length of the delay, but that motions to strike have routinely been granted in cases involving a two month delay. *See, e.g.*, *Ballard v. Krystal Restaurant,* 2005 WL 2653972 (M.D. Ala. Oct. 17, 2005) (granting defendant's motion to strike because plaintiff waited two and a half months to disclose its expert); *White*, 211 F.R.D. at 670 (granting defendants' motion to strike because plaintiff disclosed an expert witness seven weeks late). We therefore concluded that Defendant's failure to timely disclose its expert was not substantially justified and that Defendant would not be allowed to rely on the opinion of Dr. Sinnreich or any of his expert testimony for the purposes of this case.

Because Defendant has no expert witness in this case, there is no foundation that can be established that would undermine Dr. Zollo's scientific methods. And any rebuttal testimony on the scientific methodology would also be outside the purview of a lay witness. Therefore, Plaintiff's motion in limine to exclude testimony in its case in chief that the XL Tribometer has been disavowed in the scientific community is **GRANTED**. The motion is Denied, however, to the extent that Plaintiff is seeking to preclude Defendant from questioning Dr. Zollo about the reliability of that device or his knowledge of its acceptance or disavowal in the

scientific community. There is nothing improper about questioning the expert himself as to his knowledge of this topic. To the extent that impeachment evidence exists that can be used with the witness, this too could be utilized at trial. This Order is limited to testimony or matters other than impeachment evidence.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's motion in limine [D.E. 43] is **GRANTED in part** and **DENIED in part**:

A. Plaintiff's motion to preclude Defendant from presenting testimony on areas where it failed to produce a corporate representative is **DENIED**.

B. Plaintiff's motion to preclude Mr. Dominguez's testimony on the COF standard used aboard Defendant's vessels is **DENIED**.

C. Plaintiff's motion to preclude any testimony on letters of protection is **DENIED**.

D. Plaintiff's motion to preclude Defendant from referencing any cases where Dr. Zollo was retained, proffered testimony, or was subjected to a *Daubert* challenge is **GRANTED** but with leave to renew at trial if a sufficient basis for impeachment on collateral matters exists.

E. Plaintiff's motion to preclude the testimony of Dr. Rangan is **DENIED**.

F. Plaintiff's motion to preclude testimony on whether the XL Tribometer has been disavowed in the scientific community is **GRANTED** except insofar as the issue is raised for impeachment purposes only.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 17th day of July, 2018.

>	/s/ *Edwin G. Torres*
>	EDWIN G. TORRES
>	United States Magistrate Judge